UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------------------x

TEOFILO COLON,                                           :
                                                         :
                              Plaintiff,                 :          08 Civ. 3142 (HB)
                                                         :
            -against-                                    :          OPINION & ORDER
                                                         :
CITY OF NEW YORK, DEPARTMENT OF CORRECTION               :
COMMISSIONER MARTIN F. HORN, PRISON HEALTH               :
SERVICES, INC., MICHAEL CATALANO, C.E.O. OF              :
PRISON HEALTH SERVICES, INC., DOHMH MEDICAL              :
DIRECTOR TREVOR PARKS, DOHMH PROGRAM                     :
DIRECTOR REBECCA PINNEY, DOHMH DEPUTY                    :
COMMISSIONER LOUISE COHEN, DR. JEAN RICHARD,             :
BELLEVUE HOSPITAL CENTER, DR. DIAH DOUGLAS,              :
DR. SHEEL SHARMA, DR. STEVEN LEE, DR. MICHAEL            :
HALL, "JOHN DOE" MEDICAL PROVIDERS PRISON                :
HEALTH SERVICES, "JOHN DOE" MEDICAL                      :
PROVIDERS BELLEVUE HOSPITAL CENTER                       :
                                                         :
                              Defendants.                :
--------------------------------------------------------------------------------x

Hon. HAROLD BAER, JR., United States District Judge:

        This action arises out of allegations that Plaintiff Teofilo Colon ("Plaintiff" or "Colon")
suffered an injury to his left thumb while he was a pretrial detainee at Rikers Island, and that he
received improper medical care in response to that injury.  Specifically, Colon brought this
action alleging (1) deliberate indifference to serious medical needs in violation of the United
States Constitution, pursuant to 42 U.S.C. § 1983;[1] (2) medical malpractice; (3) constitutional
tort in violation of §§ 5, 6 and 12 of the New York State Constitution; (4) negligence; and (5)
negligent hiring as to the City of New York ("City") and Prison Health Services, Inc. ("PHS")
and its medical staff.  Defendants[2] move for summary judgment on each of Plaintiff's claims.

---

[1] In his First Amended Complaint, Colon's deliberate indifference claim is stated in two independent causes of
action – one for violation of 42 U.S.C. § 1983 (First Cause of Action), and another for deliberate indifference to
serious medical need (Second Cause of Action).  These are, in substance, one cause of action for alleged violation of
Colon's constitutional rights.

[2] The Defendants in this matter may be roughly categorized into two groups.  First, Colon has sued individuals and
entities who allegedly were involved, in a direct or supervisory position, in his treatment at Rikers Island
Correctional Facility ("Rikers").  These Defendants are the City, Commissioner Horn, Michael Catalano, Trevor
Parks, Rebecca Pinney, Louise Cohen, Jean Richard and various "John Doe" medical providers of PHS.  Colon also
named defendants who were involved in his treatment at the New York Health and Hospitals Corporation
("NYCHHC"), sued here as "Bellevue Hospital Center."  These Defendants are NYCHHC, Dr. Diah Douglas, Dr.

For the reasons set forth below, Defendants' motion for summary judgment on Colon's deliberate indifference claim is granted, and the remaining state law claims are dismissed without prejudice for lack of supplemental jurisdiction.

## I.  FACTUAL BACKGROUND[3]

Colon was incarcerated as a pretrial detainee in the custody of the New York City Department of Correction at Rikers from September 12, 2006 to October 15, 2007.  Throughout his confinement at Rikers, Colon was provided medical and mental health treatment through the New York City Department of Health and Mental Hygiene ("DOHMH"), Division of Health Care Access and Improvement, Correctional Health Services ("CHS").  In 2007, PHS held the contract to provide administrative and managerial support for the contract under which medical services were provided to inmates at all New York City jails except for the Vernon C. Bain Center.  The medical services at Rikers are provided under a contract with Prison Health Services Medical Services, P.C. (the "P.C.").  For an inmate to receive specialized medical treatment not available at Rikers, such as Colon required, he must be sent to Bellevue Hospital for either admission or treatment at a specialty outpatient clinic.

Colon's claims all arise from allegedly improper medical treatment he received at Rikers and/or Bellevue Hospital after he injured his left thumb on February 19, 2007 during an altercation with another inmate.  The incident occurred at approximately 9:40 p.m. on February 19; within hours, at approximately 1:10 a.m. on February 20, 2007, Plaintiff was seen at the

---

Sheel Sharma, Dr. Steven Lee, Dr. Michael Hall, and several "John Doe" medical providers. These groups of defendants will be hereinafter referred to as the "City Defendants" and the "Bellevue Defendants," respectively.

[3] The facts of this case are largely undisputed.  Unless otherwise noted, this Factual Background is based on Plaintiff's Statement of Material Facts Pursuant to Local Rule 56.1 and Responses to Defendants' Statements ("Rule 56.1 Statement").  To the extent Plaintiff argues that the Bellevue Defendants' motion for summary judgment should be denied as procedurally deficient for failure to submit its own Rule 56.1 Statement, the Court notes that the Bellevue Defendants did submit a statement of material facts on which their motion is based, in numbered paragraphs with citations to the record, as required under Local Rule 56.1.  To deny their motion out of hand because this statement of facts was submitted in the form of an affidavit rather than a Rule 56.1 Statement would honor form over substance.  "The purpose of Local Rule 56.1 is to streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties."  *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001).  While the affidavit submitted in support of the Bellevue Defendants' motion did not comply with the letter of Rule 56.1, it certainly did serve this salutary purpose.  Moreover, Plaintiff has alleged no prejudice as a result of the failure to submit a Rule 56.1 Statement.  Accordingly, I decline Plaintiff's invitation to dispose of the Bellevue Defendants' motion on this procedural defect.  *See, e.g., Photopaint Techs., LLC v. Smartlens Corp.*, 335 F.3d 152, 156 n.2 (2d Cir. 2003) (noting that failure to comply with Rule 56.1 was excused because relevant facts were apparent from parties' submissions and no evidence of prejudice from the defect was shown); *Ostroski v. Town of Southold*, 443 F. Supp. 2d 325, 333 (E.D.N.Y. 2006) (concluding plaintiff was not prejudiced, despite defendant's failure to submit a Local Rule 56.1 Statement, where the "relevant facts were readily apparent from the facts section of the memorandum of law").

AMKC Clinic by a nurse, who applied a cold compress to Plaintiff's thumb and referred him to a physician or physician's assistant for further evaluation.  Plaintiff was seen by a physician's assistant at approximately 4:40 a.m. on February 20.  The physician's assistant observed swelling and redness at the metacarpophalangeal joint on Plaintiff's left thumb and ordered a stat left hand x-ray and Motrin, and referred Plaintiff to Urgicare.  The Urgicare physician asked Plaintiff questions about his injury; the doctor's notes indicate that Plaintiff described a history of injuries to his left hand "years ago."  The physician observed swelling, redness and tenderness in Plaintiff's left hand, but with no deformity.  Upon review of Plaintiff's x-ray, the physician described his injury as a "thumb base fracture."  The report of the x-ray further indicated that Plaintiff had a "dorsally displaced transverse fracture of the base of the 1st metacarpal," and that the fracture was not dislocated.  The physician applied a thumb spica splint to the injury and made an appointment for Plaintiff to see a hand specialist at the Bellevue Hand Clinic ("BHC").  By two days later, on February 22, Plaintiff had been scheduled for two separate appointments at the BHC, one on February 27 and one on March 6.

Colon was transported from Rikers and appeared for his appointment at Bellevue on February 27 and his left thumb was x-rayed by Bellevue technicians.  A BHC radiologist interpreted the x-ray as reflecting a "Rolando fracture" of the base of the left first metacarpal.  At his March 6 appointment, Colon's thumb spica splint was changed, and he was scheduled to undergo hand surgery at the Bellevue Hand Service.  The surgery would consist of a closed reduction percutaneous pinning ("CRPP") or open reduction internal fixation ("ORIF") of the left thumb.  Plaintiff reported no pain issues during his March 6 appointment.  The surgery was initially scheduled for March 13, 2007 and was to be performed by Defendant Sheel Sharma, M.D. ("Dr. Sharma").  The surgery ultimately was not performed on the scheduled day due to an emergency requiring the Bellevue Hand Surgery Service.  After having been admitted to the hospital in preparation for the surgery, Colon remained at Bellevue until March 16, 2007.  His medical chart indicates that he declined to remain at the BHC after the surgery could not be performed on either March 15 or March 16.  When Plaintiff was discharged on March 16, his surgery was rescheduled to take place on March 22, 2007 and was to be performed by Defendant Steven K. Lee, M.D. ("Dr. Lee").  Dr. Sharma testified at his deposition that Plaintiff had a window of approximately six weeks for surgery before the fracture would heal.

Plaintiff was admitted once again to Bellevue on March 21, 2007 in preparation for his surgery scheduled for the next day; however, the surgery did not take place as scheduled because

the fluoroscope – a radiological imaging machine used for visualizing bones during the procedure – had malfunctioned and required service.  Plaintiff alleges that the fluoroscope had been malfunctioning for approximately a year and that it was in obvious need of repair or replacement.  The fluoroscope was repaired on March 22, 2007.  Plaintiff was discharged from the BHC on March 23, 2007.  No specific date was set for the surgery to take place, but his Discharge Instruction Sheet indicated that he was to return to the BHC in two weeks.

Pursuant to this instruction, Plaintiff was scheduled for appointments at the BHC for April 3 and April 10, but these appointments were cancelled.  It is unclear from the record why the April 3 appointment was cancelled; the April 10 appointment was cancelled because Rikers clinicians were informed the BHC was closed on that day.  Attempts were made in the interim to reschedule Plaintiff's appointment, and the appointment ultimately was scheduled for April 17, 2007.  In the meantime, on April 12, 2007, non-party Dale Wilker, Esq. of the Prisoners' Rights Project emailed a complaint on Plaintiff's behalf stating that Plaintiff complained that "PHS has not sent him back [to the BHC] for surgery which is overdue."  Upon receiving Mr. Wilker's email, Defendant Trevor Parks, M.D. ("Dr. Parks") immediately alerted Defendant Jean Richard ("Dr. Richard") so that Dr. Richard could investigate.[4]  Dr. Richard then arranged for Plaintiff to be seen in the AMKC Clinic.  Plaintiff was seen that same day by non-party Dr. Sein Than, who examined Plaintiff and wrote a consultation request for follow-up at the BHC.  The appointment at the BHC was scheduled for May 1, 2007.  As a result, Plaintiff had two scheduled appointments at the BHC, one for April 17 and one for May 1.

On April 17, Plaintiff attended his appointment at the BHC and was seen by Defendant Michael Hall, M.D. ("Dr. Hall"), who examined Plaintiff's thumb under a fluoroscope after removing the thumb spica splint.  Dr. Hall observed that there was no tenderness to palpation or instability at the thumb, and it was neurovascularly intact.  There was also no motion of the fracture when pressure was applied.  Plaintiff was instructed to perform range of motion exercises and another thumb spica splint was applied.  The note written at or after the examination indicated that Plaintiff "will call back, no appt for now."  Dr. Hall testified that his

---

[4] Dr. Parks is the President and Medical Director of the P.C. and is responsible for employing physicians and generally supervising the medical care provided to inmates at Rikers.  Dr. Parks' job description does not include the direct provision of medical treatment to inmates, and he did not personally provide Plaintiff with any medical treatment.  Dr. Richard is the Site Medical Director of the AMKC Clinic, in which role he supervises physicians who provide direct care to inmates.  Dr. Richard does not generally have any direct contact with patients.

examination of Plaintiff's thumb on April 17 indicated that the fracture had healed on its own. Thus, no additional appointment or surgery was scheduled.

On May 29, 2007, Plaintiff requested follow-up at the BHC because of pain in his left thumb. He was seen at Rikers by non-party Dr. Nason on June 8, 2007, and she wrote him a consultation request to be seen at the BHC. The BHC appointment was scheduled for June 26, 2007. On June 22, 2007, in preparation for his June 26 appointment, Plaintiff's left thumb was x-rayed at the BHC. The x-ray showed a healed fracture and preserved joint spaces. On June 25, apparently unaware that Plaintiff had a BHC appointment scheduled for the next day, Mr. Wilker sent another email on Plaintiff's behalf inquiring why Plaintiff still had not undergone surgery. Mr. Wilker's email assumed that Plaintiff's thumb had not been properly reset and casted, but as noted, Plaintiff's April 17 examination at the BHC revealed that the fracture was aligned.

The next day, on June 26, Plaintiff appeared as scheduled for his BHC appointment and was examined by Dr. Lee, whose notes indicated that Plaintiff had lost the normal contour in his thumb knuckle joint (or MCP), but Plaintiff felt no pain in the joint. As Dr. Lee testified at his deposition, the MCP is not the area that Plaintiff injured in February 2007; rather, Plaintiff had injured the base of his left thumb, where Dr. Lee's note indicated a lack of abnormality as of June 26. Dr. Lee scheduled a follow-up appointment within two weeks, on July 10, to discuss Plaintiff's surgical options and treatment plan. Dr. Lee testified that his review of the June 22, 2007 x-ray indicated that there was no need for immediate action for treatment of Plaintiff's left thumb. In the interim before his July 10 appointment at the BHC, Plaintiff was again seen by Dr. Nason on Rikers on July 6, 2007.

When Plaintiff returned to the BHC on July 10, the examining doctor again observed a loss of contour of the left thumb knuckle, and noted that Plaintiff continued to experience some loss of mobility and pain along the dorsal surface of his thumb. The doctor's notes indicate that Plaintiff was instructed to return in two weeks for possible surgery to fuse the joint, but that it was also explained to Plaintiff that the surgery could decrease his range of motion. Plaintiff returned to the BHC on July 16 and was seen by Dr. Lee, who ordered a CT scan to assess whether the February 2007 fracture had an articular component that required operative management. The CT scan was performed on July 20 and indicated that plaintiff had a "healed impacted fracture of the proximal metaphysis of the first metacarpal with slight lateral subluxation at the first carpometacarpal joint with no evidence of nonunion or complication." As

5

to the loss of MCP, the CT scan revealed "degenerative changes in the MCP joint evidenced by subchondral cysts and sclerosis" and for the first time, the joint appeared to be "medially subluxed (or shifted out of position)."  An MRI was recommended to assess for radial collateral ligament injury.  On July 31, 2007, at the BHC, Plaintiff was offered an MRI to evaluate whether he had injury to his ligaments as a result of the knuckle having shifted out of place, but Plaintiff refused the MRI and instead agreed to return to the BHC on an as-needed basis to manage any pain.  Plaintiff never requested any follow-up at the BHC after July 31, 2007.

On October 15, 2007, Plaintiff was discharged from Rikers into the custody of the New York State Department of Correctional Services ("DOCS").  He complained of pain in his left thumb for the first time while in DOCS custody on May 13, 2008, over nine months after his last appointment at the BHC.  He underwent an x-ray on June 24, 2008, which indicated a healed fracture at the base of his left thumb, and mild degenerative change at the IP joint of the thumb.  The x-ray report indicated that "no action is required at this time."  The DOCS chart does not reflect that any medical personnel advised Plaintiff that his February 2007 injury had healed with arthritis.  At his deposition on December 5, 2008, Plaintiff demonstrated that the site of pain was the knuckle of his left thumb.

The City Defendants, the Bellevue Defendants and Plaintiff all retained separate experts in this matter to assess the extent of Colon's injuries and to assess the care he received at Rikers and the BHC.  The City Defendants' expert, hand surgeon Dr. Steven Green, examined Colon on December 9, 2008.  When asked to describe his symptoms, Colon told Dr. Green that he had spasms in the thumb/index finger web space when wringing out clothes; a weak pinch; difficulty rolling cigarette paper; difficulty squeezing a tube of toothpaste; was unable to do pushups and had difficulty lifting weights; experienced pain when using a baseball glove or bat; had difficulty palming a basketball, opening a jar or holding a large bottle or cup; pain when playing cards or dominoes; pain while holding a book and difficulty when trying to use a mop.  From his examination and review of Colon's x-rays, Dr. Green concluded that Colon did sustain an extra-articular fracture of the base of the left thumb, but this fracture was not a Rolando fracture because it did not disrupt the articular surface of the joint.  The fracture was observed to have healed with some dorsal angulation, which resulted in stiffness of the MCP joint.  Dr. Green concluded that Plaintiff's functional complaints are related to a lack of mobility in the MCP joint, and not related to the fracture at the base of the thumb.  The Bellevue Defendants' expert, board-certified plastic surgeon Dr. Michael Fiorillo, did not examine Colon's injuries personally,

6

but he reviewed the various documents in connection with this matter, including medical charts and radiological films from both Rikers and the BHC.  Dr. Fiorillo's report concludes that, within a reasonable degree of medical certainty, the management of Colon's left thumb fracture was at all times within good and acceptable medical and surgical practice, and that there was no unreasonable delay or denial of access to medical care with respect to Colon's injury.  Plaintiff's own expert, orthopedic surgeon John J. Leppard III, characterized the surgery that had originally been scheduled for Colon, but which he never received, as "elective," and acknowledges that the fracture ultimately healed spontaneously without reduction.  Upon examination of Colon's thumb on April 1, 2009, Dr. Leppard observed what he described as a "cosmetic" deformity of the left thumb, and evidence of difficulty firmly grasping wide objects, moderate tenderness to firm palpation, occasional cramping at the base of the thumb and a loss of some degree of motion, but no numbness or problems with the rest of Colon's fingers.  Dr. Leppard observed that Colon completed the exam without complaint or pain.  From this exam, Dr. Leppard concluded that Colon had a healed mal-union of a proximal left thumb fracture with residual flexion deformity, and resultant loss of balance, strength and stability of soft tissue.  He opined that future surgery "may be offered based on the degree of complaints and the patient's desires in the future."

## II.  LEGAL STANDARD

A motion for summary judgment must be granted if the moving party shows "there is no genuine issue as to any material fact" and it "is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  Summary judgment should be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In showing the existence of a genuine issue of material fact, "the non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful."  *Golden Pac. Bancorp v. F.D.I.C.*, 375 F.3d 196, 200 (2d Cir. 2004).  Rather, he "must come forward with evidence sufficient to allow a reasonable jury to find in [his] favor."  *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001); *see also* Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is

made and supported as provided in [the] rule, . . . the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial."). The facts must be presented in a form that would be admissible at trial. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). Even if the parties dispute material facts, summary judgment must be granted "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

## III.  DISCUSSION

### A.    Deliberate Indifference to Serious Medical Need

Colon claims that the City Defendants and the Bellevue Defendants were deliberately indifferent to his serious medical needs in failing to provide adequate treatment for his fractured thumb. Reduced to its essentials, Colon's contention that he suffered a constitutional violation is premised on his never having received surgery on his thumb, which he contends caused him disfigurement, lack of mobility and pain. To succeed in an action brought under § 1983, Colon must show that there has been a denial of a constitutional or federal statutory right and that the deprivation occurred under color of state law. *See* 42 U.S.C. § 1983; *West v. Atkins*, 687 U.S. 42, 48 (1988). Thus, section 1983 "is not itself a source of substantive rights. It merely provides 'a method for vindicating federal rights elsewhere conferred,'" such as in the U.S. Constitution. *Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)).

Because Colon was a pretrial detainee at the time he was injured, his claim for deliberate indifference is properly analyzed under the Due Process Clause of the Fourteenth Amendment. *Bryant v. Maffucci*, 923 F.2d 979, 983 (2d Cir. 1991). The standard to be applied is identical to the deliberate indifference standard for prisoners under the Eighth Amendment's prohibition against cruel and unusual punishment. *See, e.g.*, *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983); *Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000) (noting that the Second Circuit "often applie[s] the Eighth Amendment deliberate indifference test to pretrial detainees bringing action under the Due Process Clause of the Fourteenth Amendment"). In *Estelle v. Gamble*, 239 U.S. 97, 101 (1976), the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain." To prove deliberate indifference to serious medical needs, a plaintiff must prove two elements, one objective, the other subjective: (1) that the alleged deprivation is, objectively, "sufficiently

serious"; and (2) that the official in question had a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). That is, "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Cain v. Jackson*, 05 Civ. 3914 (LAP) (MHD), 2007 U.S. Dist. LEXIS 55090 (S.D.N.Y. July 27, 2007) (citing *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)).

       *1.*    ***Objective Prong***

       Under the objective prong of the deliberate-indifference analysis, Colon must show that his medical condition was "sufficiently serious." *See Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (finding a deprivation is sufficiently serious when it presents a "condition of urgency, one that may produce death, degeneration, or extreme pain"); *see also Trammell v. Keane*, 338 F.3d 155, 161 (2d Cir. 2003) (sufficiently serious deprivation is one that denies "the minimal civilized measure of life's necessities"). As the Second Circuit has recognized, "[t]here is no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003). However, numerous cases have set forth an illustrative list of factors that guide the analysis, including (1) whether a reasonable doctor or patient would perceive the medical need in question as "important and worthy of comment or treatment," (2) whether the medical condition significantly affects daily activities, and (3) whether the plaintiff suffers from "the existence of chronic and substantial pain." *Id.*; *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (citations omitted); *Smith v. Carpenter*, 316 F.3d 178, 187 (2d Cir. 2000) ("[A] serious medical need exists where the failure to treat a prisoner's injury could result in further significant injury or the unnecessary and wanton infliction of pain.") (internal quotation marks omitted). "Trivial or insignificant conditions do not fall within the scope of [constitutional] protection. Rather, the Eighth Amendment 'contemplates a condition of urgency that may result in degeneration or extreme pain.'" *Wright v. New York State Dep't of Corr. Servs.*, 06 Civ. 03400 (RJS)(THK), 2008 U.S. Dist. LEXIS 106507, at *44 (S.D.N.Y. Oct. 14, 2008), *adopted by*, 2008 U.S. Dist. LEXIS 96647 (S.D.N.Y. Nov. 24, 2008) (quoting *Chance*, 143 F.3d at 702); *see also Evering v. Reilly*, No. 98 Civ. 6718, 2001 WL 1150318, at *9 (S.D.N.Y. Sept. 28, 2001) ("It is well established that more than minor discomfort or injury is required in order for a plaintiff to demonstrate a serious medical need."). Yet, an inmate is not required to demonstrate that he "experiences pain that is at the limit of

human ability to bear, nor . . . that his or her condition will degenerate into a life-threatening one." *Brock*, 315 F.3d at 163.

Courts in this Circuit, as well as in other jurisdictions, consistently have found that a broken finger is not sufficiently serious as a matter of law. *E.g.*, *Revenell v. Van der Steeg*, 05 Civ. 4042 (WHP), 2007 U.S. Dist. LEXIS 17868, at *10 (S.D.N.Y. Mar. 14, 2007) ("Most courts have held that a broken finger does not constitute a serious medical need."); *Magee v. Childs*, 04-CV-1089 (GLS)(RFT), 2006 U.S. Dist. LEXIS 14571, at *12 (N.D.N.Y. Feb. 27, 2006) ("[M]any courts have held that a broken finger does not constitute a serious injury."); *Henderson v. Doe*, 98 Civ. 5011, 1999 U.S. Dist. LEXIS 8672, at *6-7 (S.D.N.Y. June 10, 1999) (holding that "conditions that have failed to meet [the 'sufficiently serious'] standard include . . . a broken finger"); *Rivera v. S.N. Johnson*, 1996 U.S. Dist. LEXIS 14192, at *6-7 (W.D.N.Y. Sept. 20, 1996) ("A broken finger, without more, simply does not present a condition of urgency of the type that may produce death, degeneration or extreme pain which correspondingly merits constitutional protection."); *see also Jackson v. Fernauld*, 104 Fed. Appx. 443 (5th Cir. 2004) (affirming summary judgment on § 1983 claim based on failure to treat broken thumb); *Sherrer v. Stephens*, 50 F.3d 496 (8th Cir. 1994) (granting summary judgment where broken index finger was insufficient to sustain deliberate indifference claim); *Terry v. City of Danville*, No. 89-0039-D, 1989 U.S. Dist. LEXIS 18037 (W.D. Va. Oct. 13, 1989) (granting summary judgment on claim based on improper treatment of broken thumb); *Rodriguez v. Joyce*, 693 F. Supp. 1250, 1252-53 (D. Me. 1988) (finding broken finger was not sufficiently serious to support a claim for deliberate indifference).

Here, it is clear that Colon's thumb fracture is not sufficiently serious to form the predicate for a claim of deliberate indifference to serious medical need under § 1983. To be sure, Colon complained of some pain, swelling, discomfort and reduced range of motion in his thumb following his injury in February 2007. However, these kinds of complaints are surely not sufficiently severe to "produce death, degeneration, or extreme pain," *Hathaway*, 37 F.3d at 66, or to deny "the minimal civilized measure of life's necessities," *Trammell*, 338 F.3d at 161. Indeed, as soon after his injury as March 6, 2007, at his appointment at the BCH, it was noted that Colon reported no pain issues at all. In his April 17, 2007 appointment, Dr. Hall observed that there was no tenderness to palpation or instability at the thumb, that there was no nerve damage in the thumb, and that there was no motion in the fracture when pressure was applied. Several appointments later, on June 26, Plaintiff was again examined and informed Dr. Lee that

he felt no pain in his thumb joint.  When he was examined by the City Defendants' expert, Dr. Green, Colon described several symptoms that indicated some difficulty performing everyday tasks (such as wringing out clothes, using a mop, or squeezing a tube of toothpaste), but nothing that indicates that he suffered from any deprivation that rises to the level of a constitutional violation.  Accordingly, I find that Plaintiff has failed to raise a genuine issue of material fact as to the objective prong of the deliberate indifference analysis.

 2. *Subjective Prong*

Even if Colon had established a genuine issue of material fact with respect to the objective seriousness of his injury, summary judgment nonetheless is appropriate because he cannot sufficiently establish that any of the Defendants has acted with the requisite "culpable state of mind" to prove his § 1983 claim for deliberate indifference to medical needs.  "An official acts with the requisite deliberate indifference when the official 'knows of and disregards an excessive risk to inmate health or safety.'"  *Chance*, 143 F.3d at 702 (quoting *Farmer*, 511 U.S. at 837).  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837.  The Second Circuit has found that this state of mind is analogous to the standard of recklessness in criminal law.  *See Smith*, 316 F.3d at 184 (quoting *Phelps v. Kapnolas*, 308 F.3d 180, 186 (2d Cir. 2000) (*per curium*)).

To meet this standard of culpability, a defendant's actions must be more than mere negligence or medical malpractice; rather, plaintiffs must show that the defendant acted with a reckless disregard for the risk presented.  *Stevens v. Goord*, 535 F. Supp. 2d 373, 384 (S.D.N.Y. 2008) (citing *Farmer*, 511 U.S. at 835); *see also Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation simply because the victim is a prisoner.").  A plaintiff "need not show that a prison official acted or failed to act believing that harm would actually befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm."  *Farmer*, 511 U.S. at 842-43; *Wright*, 2008 U.S. Dist. LEXIS 106507 at *45 (to show deliberate indifference, "a prisoner must show more than negligence, but less than conduct undertaken for the very purpose of causing harm"); *cf. McCloud v. Delaney*, 677 F. Supp. 230, 232 (S.D.N.Y. 1988) (requiring conduct that "shocks the conscience" or a "barbarous act") (citing *United States ex rel. Hyde v. McGinnis*, 429 F.2d 864 (2d Cir. 1970)).  It is well-established that mere disagreement over choice of treatment does not rise to the level of a constitutional violation.  *Estelle*, 429 U.S. at 105-06; *Chance*, 142 F.3d at 703; *Adams v. Perez*,

08 Civ. 4834 (BSJ)(MHD), 2009 U.S. Dist. LEXIS 15447, at *9-10 (S.D.N.Y. Feb. 27, 2009)

("It is well established that a difference of opinion between a prisoner and prison officials

regarding medical treatment does not, as a matter of law, constitute deliberate indifference.");

*Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 313 (S.D.N.Y. 2001)

("[D]isagreements over . . . diagnostic techniques . . ., forms of treatment, or the need for

specialists or the timing of their intervention, are not adequate grounds for a § 1983 claim.").

Nor can deliberate indifference be established where an inmate "might prefer a different

treatment" or feels he did not receive the level of medical attention he desired.[5]  *Chance*, 143

F.3d at 703.  So long as the "treatment given is adequate, the fact that a prisoner might prefer a

different treatment does not give rise to" a constitutional claim.  *Id.*  However, medical decisions

that are "contrary to accepted medical standards" may constitute deliberate indifference where a

physician is shown to have "based his decision on something other than sound medical

judgment."  *Stevens*, 535 F. Supp. 2d at 385.

It should be noted, as numerous courts in this Circuit have recognized, that "prison

officials and medical officers have wide discretion in treating prisoners, and Section 1983 is not

designed to permit federal courts to interfere in the ordinary medical practices of state prisons."

*Sonds*, 151 F. Supp. 2d at 311.  Federal courts are therefore "generally hesitant to second guess

medical judgments and to constitutionalize claims which sound in state tort law."  *Id.*  Indeed, in

view of courts' reticence to become enmeshed in claims of mere medical malpractice or

negligence, in the § 1983 inquiry medical providers are given a "presumption of correctness."

*Id.* (citing *Perez v. County of Westchester*, 83 F. Supp. 2d 435, 440 (S.D.N.Y. 2000)).

In this case, the record evidence indicates that, far from having his medical needs

ignored, Colon indeed received significant medical attention for several months following his

February 2007 thumb injury.  Within approximately three and one-half hours after his thumb was

injured, Plaintiff was seen by a nurse in the AMKC Clinic, who applied a cold compress and

referred him to a physician's assistant.  But a few hours later, the physician's assistant ordered a

stat x-ray and referred Plaintiff to Urgicare.  That same day, a referral was written for Plaintiff to

be seen by a hand specialist at the BHC.  Thereafter, Plaintiff was seen by doctors at both the

BHC and Rikers on no fewer than thirteen occasions, and was given numerous examinations, x-

rays and CT scans.  Indeed, on July 31, Plaintiff was offered to have an MRI taken to assess for

---

[5] Indeed, the "Constitution does not command that inmates be given the kind of medical attention that judges would
wish to have for themselves . . . the essential test is one of medical necessity and not one simply of desirability."
*Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986).

radial collateral ligament injury in his thumb, but Plaintiff refused the MRI and instead agreed to return to the BHC on as-needed basis.  On several occasions, the possibility of surgery was discussed, and indeed the surgery was scheduled and cancelled at least twice.  However, both of these cancellations – one because an emergency required the BHC Hand Service, and the other because a necessary piece of equipment had malfunctioned – were out of the control of the treating physicians.

*        *        *

Accordingly, the record evidence reveals no genuine issue of material fact as to either the objective or subjective prongs of the deliberate indifference analysis, and I find that no reasonable jury could find that Colon suffered a constitutional violation as a result of the treatment he received for his fractured thumb.  Because Colon cannot show deliberate indifference on the part of any of his medical providers, he likewise raises no issue of fact as to whether any supervisor should have prevented or corrected a constitutional violation.  *See, e.g.*, *Wright*, 2008 U.S. Dist. LEXIS 106507, at *57 (citing *Hernandez v. Keane*, 341 F.3d 137, 144045 (2d Cir. 2003)); *see also Ramos v. Artuz*, No. 00 Civ. 0149, 2003 U.S. Dist. LEXIS 2261 (S.D.N.Y. Feb. 13, 2003) (granting summary judgment to a doctor on supervisory liability claim because doctor's subordinate had committed no constitutional violation).  Consequently, summary judgment is appropriate on Colon's constitutional claim as to all Defendants.

**B.      <u>Supplemental Jurisdiction</u>**

All of Plaintiff's remaining causes of action allege violations of state law, i.e., negligence, medical malpractice, negligent hiring and constitutional tort under New York law. Where a plaintiff lacks a valid federal claim, a district court has the discretion to decline to exercise supplemental jurisdiction over his pendent state-law claims.  *E.g.*, *Matican v. City of N.Y.*, 524 F.3d 151, 154-55 (2d Cir. 2008) (citing *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006)); *Klein & Co. Futures, Inc. v. Board of Trade*, 464 F.3d 255, 262 (2d Cir. 2006) ("In the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining jurisdiction over the remaining state-law claims.") (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)); *see also* 28 U.S.C. § 1367(c)(3).  Here, summary judgment is granted on Plaintiff's single federal cause of action, and I decline to exercise supplemental jurisdiction over Colon's remaining state-law claims, and they are dismissed without prejudice.

13

## IV. CONCLUSION

For the foregoing reasons, Defendants' motions for summary judgment are GRANTED. The Clerk of this Court shall enter judgment in favor of the Defendants, close all open motions and remove this matter from my docket.

**IT IS SO ORDERED.**
**New York, New York**
**May 21 , 2009**

_____
U.S.D.J.

14